# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6100 | **DATE** | 8/2/2001 |
| **CASE TITLE** | Brandon, et al. Vs. Village of Maywood, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motions for summary judgment (41-1, 42-1 & 43-1) are granted in part and denied in part. Defendants' motion to strike (58-1) is denied in part. Enter Memorandum Opinion and Order. Pretrial order to be filed by 9/28/01; and response to any motions in limine by 10/12/01. Pretrial conference set for 11/14/01 at 4:00 p.m. Trial will be set at that time.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | | **Document Number** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | 65 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 8/2/2001 | | |
| | | | date mailed notice | | |
| | MPJ | courtroom deputy's initials | 99-7 FILED FOR DOCKETING 01 AUG -2 PM 6:12 Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES BRANDON, LAVELLE PARKER )
and ESSIE NICHOLS, )
)
     Plaintiffs, )
)
    v. )
)
VILLAGE OF MAYWOOD, a Municipal )
Corporation, WILLIAM LEACH, as )
Chief of Police for the Village )
of Maywood, SERGEANT JAMES )
ROBINSON, OFFICER SHAWN WOODS, )
OFFICER DARRYL FAIRLEY and )
OFFICER ALVIN CROWELL, )
)
    Defendants. ) No. 99 C 6100
)
—————————————————— )
)
VILLAGE OF MAYWOOD, a Municipal )
Corporation, WILLIAM LEACH, as )
Chief of Police for the Village )
of Maywood, SERGEANT JAMES )
ROBINSON, OFFICER SHAWN WOODS, )
OFFICER DARRYL FAIRLEY and )
OFFICER ALVIN CROWELL, )
)
    Defendants/Third- )
    Party Plaintiffs, )
)
    v. )
)
LAVELLE PARKER and ESSIE )
NICHOLS, )
)
    Plaintiffs/Third- )
    Party Defendants. )

## MEMORANDUM OPINION AND ORDER

James Brandon, Lavelle Parker and Essie Nichols sue the

Village of Maywood ("Village") and several of its police officers

under 42 U.S.C. § 1983 for violations of their constitutional

rights, and several state law claims, arising out of a botched would-be drug bust in Maywood, Illinois. The defendants bring motions for summary judgment on all counts of the complaint,[1] which I grant in part and deny in part.

## I.

The facts in this case are mostly disputed.[2] The parties agree that on July 16, 1998, Sgt. Robinson and Officers Crowell, Fairley and Woods, members of a special tactical narcotics unit, were on patrol in plain clothes and in an unmarked squad car in Maywood, Illinois. Mr. Parker was engaged in a conversation with two women behind Ms. Nichols' house. The officers claim to have seen a "hand-to-hand narcotics transaction" between Mr. Parker and one of the women. It is not clear whether Mr. Parker was in the alley or on Ms. Nichols' property at the time of the alleged "transaction," or whether Mr. Parker fled from the police before they caught him. The officers handcuffed Mr. Parker while he was lying on the ground in Ms. Nichols' back yard; there is

---

[1] I treat the three motions together because they rely on identical statements of fact and exhibits, and they repeat several legal arguments at length.

[2] The defendants move to strike several paragraphs of the plaintiffs' response to the statement of material facts on the grounds that they do not comply with Local General Rule 56.1 because they are deficient denials. But a motion to strike on these grounds is doomed to fail: if the plaintiffs' response provides an adequate denial under the Local Rules, there is no cause to strike it for noncompliance, and if the denial is inadequate, the fact will be deemed admitted and the motion to strike will be moot. *See* Local Rule 56.1(b)(3)(b).

considerable dispute about whether the officers had drawn their guns at this point, how Mr. Parker came to be on the ground and whether he resisted the officers' orders. After handcuffing Mr. Parker, the officers searched the garage on Ms. Nichols' property.

Sometime after Mr. Parker was handcuffed, Sgt. Robinson noticed that the back door of the house was ajar and heard a dog barking inside, so he closed the door to the house. Ms. Nichols came out of the house and told the officers to leave. The dog then came out of the back door of the house and started moving toward the officers, who collectively fired nineteen rounds at the dog, wounding it slightly. The dog got within ten feet of one of the officers, but eventually retreated. Mr. Brandon, who was in the back yard of his house next door, was hit in the leg. After the shooting was over, William Leach, the Chief of Police for the Village, arrived on the scene and placed a call to the Illinois State Police Public Integrity Unit to initiate an investigation. Mr. Brandon was taken to the emergency room, treated and released. Mr. Parker was transported in handcuffs to the Village police station. It does not appear that any charges were ever brought against him. The dog was taken to an animal hospital and treated.

II.

Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving parties and draw all reasonable and justifiable inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A genuine issue of fact 'exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.'" *Culver v. McRoberts*, 192 F.3d 1095, 1098 (7th Cir. 1999) (citation omitted).

### III. Section 1983 claims

The defendants argue that all of the individual defendants in this case were sued in their official capacity and should be dismissed as redundant parties. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (suit against municipal official in official capacity is equivalent to suit against municipality itself). The plaintiffs sue William Leach "in his official capacity as Chief of Police for the Village of Maywood,"[3] but they fail to specify the capacity in which they sue the individual officers. Here the plaintiffs allege that the individual officers acted tortiously, so they are sued in their individual capacity and I will not dismiss the claims against them as redundant. *See Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991).

_____

[3] The plaintiffs do not argue otherwise, so I construe the claims against Chief Leach solely as official capacity claims and dismiss them with prejudice as redundant. *See Smith v. Metropolitan Sch. Dist. Perry Township*, 128 F.3d 1014, 1021 n.3 (7th Cir. 1997).

A. Section 1983 Claims against the individual officers

1. Mr. Brandon

Mr. Brandon was accidentally shot in the leg when the officers shot at the dog. He frames his constitutional claim against the individual officers as a Fourth Amendment claim for excessive force. All claims that a law enforcement officer has used excessive force in the course of an arrest or seizure should be analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A seizure under the Fourth Amendment requires purposeful conduct, *see Brower v. County of Inyo*, 489 U.S. 593, 595 (1989); it is not enough that the officers intended to fire their guns, they must have intended to hit Mr. Brandon for his injury to constitute a seizure for Fourth Amendment purposes. *See Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000); *Medeiros v. O'Connell*, 150 F.3d 164, 168 (2d Cir. 1998); *Oledzka v. City of Chicago*, No. 88 C 8695, 1989 WL 39500, at *2 (N.D. Ill. March 16, 1989) (no Fourth Amendment cause of action for accidental shooting of innocent bystander).

Although there is no recourse under the Fourth Amendment, Mr. Brandon may seek relief under the substantive due process guarantee of the Fourteenth Amendment. *See Schaefer v. Goch*, 153 F.3d 793, 797 (7th Cir. 1998). Mr. Brandon must prove that the officers' conduct "shocks the conscience." *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). The more general

-5-

"deliberate indifference" standard does not apply without the opportunity for forethought. *Id.* at 798; *cf. Khan v. Gallitano*, 180 F.3d 829, 836 (7th Cir. 1999). "The *sine qua non* of liability in cases analogous to high speed chases . . . is 'a purpose to cause harm.'" *Schaefer*, 153 F.3d at 798; *see also Medeiros*, 150 F.3d at 170 (accidental shooting).

Even assuming that the officers were aware of the presence of innocent bystanders and that they had no previous knowledge of any attacks or viciousness of the dog--disputed here--the parties do not dispute that the dog had been barking and came out of the house and approached the officers, and that the officers reacted quickly. Where the officers were called on to make a split-second decision about whether to shoot at the dog, this is like the high-speed chase in *Lewis*. Nothing in the record suggests that the officers had "a purpose to cause harm" to Mr. Brandon, so a reasonable jury could not conclude that the officers' conduct "shocks the conscience." *See Schaefer*, 153 F.3d at 798. Because Mr. Brandon fails to state a claim for a constitutional violation, I need not address the question of qualified immunity. *See Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001) (two-part qualified immunity analysis requires plaintiff to make out claim for constitutional violation before reaching question of whether constitutional right was clearly established).

## 2. Mr. Parker

Mr. Parker claims that the officers arrested him without probable cause, and that they used excessive force in the course of the arrest. The defendants argue that they did not arrest him, but only detained Mr. Parker as part of an investigatory stop. "A seizure becomes an arrest when 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999). It is undisputed that Mr. Parker was handcuffed, that, while was in handcuffs, he was transported to the police station, and that the handcuffs were not removed until some time (Mr. Parker says five or ten minutes) after he arrived at the police station. Because none of the relevant facts are disputed, I conclude as a matter of law that Mr. Parker was under arrest. Mr. Parker testified that he was transported to the police station and questioned by officers who were not named as defendants here. The defendants argue that the acts of the other officers cannot be considered in determining whether an arrest occurred, but a jury is entitled to reach the question of causation. *See Jones v. City of Chicago*, 856 F.2d 985, 993-94 (7th Cir. 1988) (applying tort principles of causation in § 1983 case and holding that "[i]f police officers have been instrumental in the plaintiff's continued confinement . . . , they cannot escape

liability by pointing to the decisions of [others] to confine . . . him"); *see also Shifrin v. Wilson*, 412 F. Supp. 1282, 1302 (D.D.C. 1976) (causation is question for finder of fact). For the purposes of this motion, I assume that Mr. Parker's seizure was an arrest.[4]

Mr. Parker must prove an absence of probable cause to prevail on an unlawful arrest claim. *See Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). "Probable cause exists at the time of arrest when reasonably trustworthy information, facts and circumstances would lead a prudent person to believe that a suspect had committed or was committing a crime." *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000). Whether an officer had probable cause generally will present a question for the jury in actions for damages, although I may decide it when the material facts are not disputed. *Jones by Jones v. Webb*, 45 F.3d 178, 182 (7th Cir. 1995). I may not decide the question of proximate cause on a motion for summary judgment where, as here, "there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from

---

[4] Because I conclude that there are questions of fact regarding causation that preclude summary judgment on the ground that Mr. Parker was not arrested, I need not reach the question of whether Mr. Parker was subject to an arrest based solely on acts committed by the defendant officers. *Cf. United States v. Wilson*, 2 F.3d 226, 232 (finding that defendant was subject only to investigatory stop even though he was handcuffed for brief interval before officers found evidence that provided probable cause for arrest).

them." *See Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).

To recap: the parties agree that the officers drove down the alley behind Ms. Nichols' home. The defendants say that the area was known to be a "high crime/heavy narcotics trafficking area," but also testified that neither the Nichols nor Brandon residence in particular was ever under any suspicion for drug activity.[5] Mr. Parker was either in or near the alley, engaged in a conversation with two women.[6] Officers Crowell claims to have seen what he thought was a "hand-to-hand exchange of U.S. currency for an unknown object" between Mr. Parker and one of the women, Felicia Armstrong. Mr. Parker says he was merely asking for a light and

---

[5] The defendants move to strike paragraph 14 of the plaintiff's response to the statement of material facts as an "improper denial" under the local rules because it does not address the statement that the *area* was known for a high volume of drug trafficking. The testimony of Officers Robinson and Woods that the Brandon and Nichols homes were never under suspicion for drug activity would be a possible basis for impeaching their statements. This presents a credibility question, which renders summary judgment inappropriate. *See Cameron v. Francis Slocum Bank & Trust*, 824 F.2d 570, 575 (7th Cir. 1987) (citing 10A Wright Miller & Kane, *Federal Practice & Procedure* § 2726, at 115-16 (2d ed. 1983)). This is particularly true where, as here, a party's knowledge or belief of certain events is exclusively in control of the party moving for summary judgment. *See* 10A Wright Miller & Kane, *Federal Practice & Procedure* § 2726, at 453 (3d ed. 1998). The motion to strike plaintiffs' paragraph 14 is therefore denied.

[6] Neither party explains what Mr. Parker was doing in Ms. Nichols' yard, but Mr. Parker says in his deposition that Ms. Nichols is his girlfriend's grandmother and that he had spent the previous night at her home.

-9-

that he and Ms. Armstrong passed a cigarette lighter between them, but he points out that neither Officer Fairley nor Officer Woods saw anything in Mr. Parker's hands, which tends to raise doubt that what the any of the officers saw was a "transaction" of any kind as opposed to mere hand-to-hand contact.[7]  A jury could reasonably believe that none of the officers saw any object change hands.

The defendants claim that Ms. Armstrong was known by some of the officers to be a drug user, though Officers Fairley and Robinson testify only that they *suspected* her to be a drug user based on contacts with her family.  Nothing in their own experiences with her would suggest that they *knew* she was a drug user.[8]  Contact with someone merely suspected of drug use is insufficient, absent other suspicious activity, to provide probable cause.  *See United States v. Everroad*, 704 F.2d 403, 406-7 (8th Cir. 1983); *but see United States v. Lima*, 819 F.2d 687, 689-90 (7th Cir. 1987) (probable cause existed where, in the middle of the night in a deserted park, criminal defendant parked at scene of pre-arranged drug transaction known to the arresting officer).

The defendants also point to Mr. Parker's "flight" from the scene.  Mr. Parker says that after he gave the lighter back to Ms.

---

[7] The defendants' motions to strike plaintiffs' responses to paragraphs 17 and 18 is denied for the same reasons stated in footnote 5.  *See Cameron*, 824 F.2d at 575.

[8] The defendants' motion to strike paragraph 19 of the plaintiffs' response to the statement of material facts is denied.

Armstrong, he started to walk back into the yard, but he stopped and turned around when he heard the police car stop, and he does not say that he walked any further before his arrest. The defendants say that he "fled" and ran into the yard: specifically, they say that he "ran", "took off" or "made haste." The officers got out of the car and approached Mr. Parker, and say that they lost sight of him at some point while he walked past the garage, retreating into the yard. The Supreme Court recently held that sudden flight in a high crime area is sufficient to give police officers reasonable suspicion to detain a suspect for a *Terry* stop, see *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), and the Seventh Circuit has held that a suspect's flight from an investigative stop may provide probable cause for an arrest, see *Tom v. Voida*, 963 F.2d 952, 960 (7th Cir. 1992). A jury could conclude, if it found that Mr. Parker fled, that the defendants had probable cause to arrest him.

Taking away the disputed facts, however, all that remains as the basis for summary judgment on the claim for arrest without probable cause is that the officers were on patrol in a neighborhood that may have been known to be a high drug-trafficking area (although there were no suspicions about the particular house behind which Mr. Parker was standing), that the officers saw Mr. Parker talking to Ms. Armstrong in the alley, that their hands touched, and that Mr. Parker retreated into the Nichols' yard and

questioned the officers when they told him to get down on the ground. On similar facts, the Supreme Court found that police officers lacked reasonable suspicion to detain and search a criminal defendant. *See Brown v. Texas*, 443 U.S. 47, 52 (1979) (no reasonable suspicion for stop where defendant was walking away from another person in an alley in a neighborhood with a high incidence of drug traffic). *Brown* involved an investigative stop, which requires reasonable suspicion, a lower standard than probable cause. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989). If the officers did not have reasonable suspicion, they could not have had probable cause. The only difference between this case and *Brown*, on the basis of the undisputed facts, is that Mr. Parker and Ms. Armstrong touched hands. The Court in *Brown* was careful to distinguish the officer's failure to give any observations to support his conclusion that the situation "looked suspicious" from "the observations of a trained, experienced police officer who is able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." 443 U.S. at 52 & n.2. Although several innocent facts may, when considered together, add up to reasonable suspicion or probable cause, justification for a seizure is lacking when, even in combination, the articulated characteristics merely describe conduct that could be ascribed to innocent parties under similar circumstances. *See United States v. Jerez*, 108 F3d 684, 693-94 (7th Cir. 1997).

-12-

People may talk and touch hands in an alley and walk away from the police, even in an area known for drug trafficking, without coming under suspicion for criminal conduct.[9]

Even if a jury concludes that the officers lacked probable cause for Mr. Parker's arrest, the officers may be entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995) (citations omitted). In the probable cause context, that means that an officer is entitled to qualified immunity if a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). The existence of a clearly established right is purely a question of law, *Apostol v. Landau*, 957 F.2d 339, 342 (7th Cir. 1992), but I must consider the specific factual situation with which the officers were confronted, *id.*, *Saucier*, 121 S.Ct. at 2156. Mr. Parker may avoid summary judgment on the issue of

---

[9] Because I conclude that there are disputed issues of fact precluding a finding of probable cause, I need not reach the question of whether Mr. Parker's arrest without a warrant in the backyard of a home in which he had been an overnight guest violated the Fourth Amendment principles announced in *Minnesota v. Olson*, 495 U.S. 1 (1990) (holding that, based on assumption that probable cause existed, an overnight guest has a reasonable expectation of privacy in host's home such that warrantless arrest in the home is justifiable only on a showing of exigent circumstances).

qualified immunity if he can (1) point to a closely analogous case or (2) show that the officers' conduct was "so patently violative of the constitutional right that reasonable officials would know without guidance from the courts." *Burns v. Reed*, 44 F.3d 525, 526 (7th Cir. 1995). On the basis of the undisputed facts at this stage, *Brown v. Texas*, 443 U.S. 47 (1989) is sufficiently "closely analogous" to conclude that the officers' violation occurred in the face of well-established law. I cannot conclude that the officers are entitled to qualified immunity at this time. However, if the facts, as determined at trial, show that the officers actually saw an object pass between Mr. Parker's and Ms. Armstrong's hands, or that Mr. Parker fled from the officers, the defendants may renew their qualified immunity claim in a motion for judgment as a matter of law.

Mr. Parker also claims that the officers used excessive force in the course of his arrest. Whether the officers' use of force in the course of a seizure violates the Fourth Amendment is judged by an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Reasonableness is judged by the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Of course, the "calculus of reasonableness must embody allowance for the fact that

officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "While excessive force does not require injury, no injury gives weight to the assertion of no excessive force." *Meyer v. Robinson*, 992 F.2d 734, 739 (7th Cir. 1993).

The facts about the amount of force used are disputed. The officers approached Mr. Parker (he says with guns drawn, the officers say not) and told him to get down. Mr. Parker asked why, but the officers did not answer him, but told him to get down a second time; Mr. Parker says they grabbed his arms, threw him to the ground, handcuffed him and stepped on his neck while they searched for drugs. Mr. Parker claims that he did not physically resist at all. The officers deny all of this, but their own testimony is not consistent. Officer Fairley said that he did not use any physical roughness with Mr. Parker because he obeyed—though cursing and swearing—the officers' verbal command to get down on the ground. Officer Woods said that Mr. Parker was struggling and screaming, and that it took both Officers Fairley and Woods to get him handcuffed. Officer Crowell said that Officers Fairley and Woods "subdued" Mr. Parker. From Officer Woods' and Crowell's statements, a reasonable jury could conclude that physical roughness or force was used to handcuff him.

However, Mr. Parker claims no physical injury as a result of the officers' actions in detaining him.

Attempted flight is a relevant factor, and I have already determined that there is a question of fact as to whether Mr. Parker fled. Mr. Parker does not dispute that the officers asked him twice to get down before they allegedly threw him to the ground; failure to comply with a verbal order can constitute resistance justifying the use of force necessary to overcome resistance. *See Mayer v. Skelly*, 172 F.3d 53, No. 98-2217, 1998 WL 894652, at *3 (7th Cir. Dec. 18, 1998) (unpublished order); *see also Ryan v. County of DuPage*, 45 F.3d 1090, 1093 (7th Cir. 1995) (refusal to comply with verbal order to remove mask provided probable cause for crime of physically resisting lawful police order). Even if Mr. Parker did not flee from the officers, under the totality of the circumstances, he has not demonstrated that the force used was excessive. He twice refused to comply with an order to get down on the ground, was not injured, and there is no suggestion that any of the officers acts amounted to gratuitous brutality.[10] The motion for summary judgment is granted as to Mr.

---

[10] Even if there had been a "gratuitous shove" that was excessive, the defendants are entitled to qualified immunity. Mr. Parker has not come forward with a closely analogous case, and although I must use my "full knowledge of relevant precedents," *Jones by Jones v. Webb*, 45 F.3d 178, 184 (7th Cir. 1995), I found no such cases. Moreover, the officers' conduct, even on Mr. Parker's view of the facts, is not so plainly excessive that they ought to have been on notice of its unconstitutionality.

Parker's claims against the individual officers in Count III for excessive force, but denied for the claims of arrest without probable cause.

### 3. Ms. Nichols

Ms. Nichols sues for unreasonable search of her property in violation of the Fourth Amendment. The parties do not dispute, and so I assume for the purposes of this motion, that Ms. Nichols enjoyed an expectation of privacy in her backyard and garage, and that a warrantless search based on probable cause may only be justified if exigent circumstances justified entry onto the property. *See Payton v. New York*, 445 U.S. 573, 586-87 & n.25 (1980). Exigent circumstances exist when police are in hot pursuit of a fleeing felon or when entry is necessary to prevent imminent destruction of evidence, a suspect's escape, or the risk of danger to the police or others inside or outside of the property. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990). Even if the officers had probable cause, which cannot be resolved here, there are questions of fact regarding the existence of exigent circumstances.

Even if Mr. Parker never left the property, as he claims, if he was in a place where the public could see him and the officers had probable cause to believe that he had committed a crime and was fleeing into the yard, the officers could follow him onto the property to arrest him. *United States v. Santana*, 427 U.S. 38, 42-43 (1976) (threshold of home was a "public place" for Fourth

Amendment purposes and retreat into home could not thwart proper arrest); *United States v. Fleming*, 677 F.2d 602, 608 (7th Cir. 1982) (same); *United States v. Hoyos*, 892 F.2d 1387, 1394 (9th Cir. 1989) (holding that defendant who was looking over backyard fence was exposed to public view and therefore in "public place," and that police were in "hot pursuit" when they followed him into backyard to arrest him). However, in this case there are disputed facts which preclude a finding at this stage that Mr. Parker was "fleeing" or a finding that the officers had probable cause to believe that a felony had been committed or that Mr. Parker may have disposed of evidence of a crime while he was out of their sight. Nothing in the record suggests that the officers had probable cause to believe that Mr. Parker posed a danger to the officers or anyone else. Therefore a reasonable jury could conclude that there were no exigent circumstances to justify the entrance onto Ms. Nichols' property. Even if entry onto Ms. Nichols' property was justified, the validity of the search of the garage as a search incident to a lawful arrest depends on the resolution of the question of whether Mr. Parker's arrest was valid. *See United States v. Robinson*, 414 U.S. 218, 235 (1973).

The defendants argue that they are entitled to qualified immunity because they could have been reasonably mistaken about the existence of exigent circumstances. I cannot so determine without resolving the underlying factual questions about the circumstances,

*viz.*, what Mr. Parker's actions were and whether they could reasonably have been construed as flight even if he was not in fact fleeing, and, even if no drug transaction actually occurred, whether the circumstances were such that the officers could reasonably have believed that there was evidence of one that might be destroyed.

Ms. Nichols also brings a claim for deprivation of property under the Due Process Clause of the Fourteenth Amendment based on the injuries to her dog from the shooting. The defendants challenge her standing to bring the due process claim on the basis of her statements at her deposition that the dog belonged to her granddaughter and not to her. Ms. Nichols' claim is more appropriately characterized under the Fourth Amendment as one for an unreasonable seizure of her personal effects. *See Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994) ("A dog is an 'effect' or 'property' which can be seized. The killing of a dog is a destruction recognized as a seizure under the Fourth Amendment . . . .") (citations omitted); *Pfeil v. Rogers*, 757 F.2d 850, 866 (7th Cir. 1985) (same). The veterinary records naming Ms. Nichols as the dog's owner are sufficient to create an issue of fact as to ownership, but her claim does not survive under either theory.

To prevail on a claim for deprivation of property without due process, Ms. Nichols would have to show that she was deprived of a constitutionally protected interest and that the deprivation was

achieved by means of constitutionally insufficient procedures. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). To determine what process is required in a particular context, I balance the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319(1976): the private interest affected; the risk of an erroneous deprivation and the probable value, if any, of additional safeguards; and the government's interest. *Id.* at 334. Applying those factors in this case, the private interests are Ms. Nichols' financial responsibility for and companionship from the dog. While not trivial, these interests do not rise to the level of something truly significant, like welfare assistance, which provides the recipient's means to live. *See Goldberg v. Kelly*, 397 U.S. 254, 261 (1970). The risk of deprivation under circumstances like this is fairly high; the officers might easily have killed the dog rather than merely injuring it. But the final factor is what is determinative in this case; the circumstances required a split-second or spur-of-the moment decision, and the officers had a strong interest in not being injured by a dog with, at the very least, an unknown propensity for violence. Although Ms. Nichols essentially received no process in this case, the violation of her property rights was minimal, and I cannot conclude that she was entitled to any additional safeguards under these circumstances. *See Ingraham v. Wright*, 430 U.S. 651, 682 (1977) (no notice or

hearing was required before imposition of corporal punishment in schools).

Under a Fourth Amendment analysis, many of the considerations are the same. Although the officers collectively fired nineteen rounds at the dog, they did not kill it. And even if their actions were objectively unreasonable, I conclude that reasonable officers under the same circumstances could have made a reasonable mistake. Ms. Nichols does not point to a closely analogous case, nor could I find one that suggests a clearly established right. I do not find that the officers were plainly incompetent or knowingly violated the law. Therefore they are entitled to qualified immunity. *See Doe v. Broderick*, 225 F.3d 440, 446 (7th Cir. 2000).

### B. *Monell* claims

I turn now to the plaintiffs' claims against the Village. A municipality cannot be held liable for the actions of individual employees under § 1983 based on a theory of *respondeat superior*. *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978). To establish municipal liability under § 1983, the plaintiffs must be able to prove (1) the existence of "an express policy that, when enforced, causes a constitutional deprivation"; (2) the existence of "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; or (3) an act of a "person with final

policymaking authority" that causes a constitutional injury. *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

The plaintiffs allege that the Village, through Chief Leach, had policies of allowing and encouraging police officers to: draw their weapons without determining whether it was safe to do so; use excessive and deadly force in situations that did not require such force; enter private property without a warrant or probable cause; and handcuff and detain suspects without a warrant in the absence of exigent circumstances. They also allege that the Village had a policy of failing to require officers to conduct a detailed and thorough investigation of the circumstances before entering private property or placing a suspect under arrest. Chief Leach submitted three affidavits (one for each motion), each of which states that he was the policymaker for the Village and denies the existence of any of the policies or practices alleged by the plaintiffs. The plaintiffs ask me to strike the affidavits as conclusory and argue that, without the affidavits, the defendants' motions must be denied as unsupported.

First, Chief Leach's affidavits are competent evidence to support a summary judgment motion. Fed. R. Civ. P. 56(e). As policymaker for the Village, the facts about police policy are within his personal knowledge, and are not unsupported conclusions. *See Hanley v. Adam*, No. 96 C 2316, 1998 WL 560282, at *5 (N.D. Ill. Aug. 26, 1998) (holding that scope of affiant's employment was a "pure assertion of fact within [his] personal knowledge that he could testify to at trial" and "not a conclusory allegation, such as 'the defendant discriminated against me' . . . .").

Second, even if the affidavits did not satisfy Rule 56(e), the plaintiffs would not be relieved of their burden to come forward with evidence to show the existence of a disputed issue of material fact. The Supreme Court rejected the precise argument that the plaintiffs make here in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), when it held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323 (emphasis in original). The defendants must identify the basis for their motion, but "regardless of whether the moving party accompanies its motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* Where the nonmoving party bears a burden of proof at trial on a

dispositive issue, a motion for summary judgment may be made with or without affidavits, and the nonmoving party must, "by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. This the plaintiffs have not done; they object to the sufficiency of Chief Leach's affidavits, but come forward with no evidence to support the existence of any of the alleged policies. If there were some factual basis in the record, for example in the deposition of Chief Leach, the plaintiffs have not directed me to it, and I need not scour the record to discover a disputed issue of material fact. *See Doe v. Cunningham*, 30 F.3d 879, 885 (7th Cir. 1994). To the extent that the plaintiffs rely on the existence of an express policy, they have failed to demonstrate that there is a disputed issue of fact for trial. Indeed, the defendants' statements that no such policies existed may be deemed admitted. Local General Rule 56.1(b)(3) (The nonmovant's response to movant's statement of material facts must include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon," and "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

The plaintiffs proceed under two theories with regard to the acts of a policymaker: either Sgt. Robinson was acting as a policymaker when he gave orders to the officers on the scene and acquiesced in their conduct, or Chief Leach was acting as a policymaker when he ratified the officers' acts by failing to discipline them. Whether a municipal official is acting as a policymaker is a question of state and local law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). The plaintiffs argue that Sgt. Robinson, as the ranking officer on the scene, was acting as a policymaker for the Village and exercising discretion when he permitted the officers to arrest Mr. Parker and search Ms. Nichols' property. However, hierarchy is not dispositive of final policymaking authority, nor is the mere exercise of discretion. *Cornfield by Lewis v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1325 (7th Cir. 1993). The defendants have produced the Village ordinances, which establish the authority of the police chief to make rules and regulations, and the plaintiffs have not come forward with any evidence that would indicate that Sgt. Robinson is a final policymaker for the Village. Indeed, case law indicates that a police sergeant is not a policymaker under state law. *See Illinois v. Fullwiley*, 710 N.E.2d 491, 495 (Ill. App. Ct. 1999) (holding that police sergeant was supervisor but not "'policy-making level' official"); *Ill v. Roland*, 812 F. Supp. 855,

861 (N.D. Ill. 1993) (holding that police sergeant is not invested with any final policymaking authority).

The defendants admit that Chief Leach was invested with final policymaking authority for the Village, and the plaintiffs claim that he ratified the officers' actions by failing to discipline them. If an authorized policymaker approves a subordinate's decision and the basis for it, the policymaker's ratification is chargeable to the municipality. *Monfils v. Taylor*, 165 F.3d 511, 517 (7th Cir. 1998) (citing *City of St. Louis v. Prapotnik*, 485 U.S. 112, 127). But the undisputed evidence here shows that Chief Leach ordered an independent investigation into the shooting incident, though none of the officers was reprimanded or disciplined. Ratification requires more explicit approval than merely failing to discipline after an investigation. *See id.*

Finally, a municipal custom or practice may be established by proof that policymaking officials knew of an established custom or practice and acquiesced in it. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993). However, because the custom or practice must be "widespread" or entrenched, a single incident of unconstitutional conduct by a non-policymaker is generally insufficient to establish liability based on municipal acquiescence in a custom or practice of unconstitutional conduct. *See Roach*, 111 F.3d at 548; *Sims*, 902 F.2d at 542-43. Instead, "it is the series [of prior incidents] that lays the premise of the system of

inference" of a municipal custom or practice. *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995). The plaintiffs argue that the officers' knowledge or belief that their actions would be approved by policymakers establishes acquiescence in a custom or practice, and cite *Grandstaff v. City of Borger*, 767 F.2d 161, 170 (5th Cir. 1985), in support. What the Fifth Circuit held in *Grandstaff*, however, was that officers' knowledge that their acts will meet with approval could establish that the custom or practice was the *moving force* behind the violation, not that the municipal policymaker had actually acquiesced in their conduct so as to prove that a custom or practice existed. *Id.*

Here, as in *Grandstaff*, the plaintiffs have not produced any evidence of prior incidents similar to those alleged, nor have they produced any evidence from which a jury could conclude that there was a widespread practice or custom of conducting unconstitutional searches or using excessive force in the course of an arrest. Even looking at all of the events of that afternoon in the aggregate, as the *Grandstaff* court did, no reasonable jury could infer the existence of a custom or practice from this one incident. *See Roach*, 111 F.3d at 549. Summary judgment is granted on the claims against the Village in Counts I, III and V.

## IV. State law claims

Although I have granted judgment against Mr. Brandon on his federal claim, I may retain jurisdiction over his state law claim,

see *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir. 1999), and I do so here. Mr. Brandon brings a claim for "willful and wanton misconduct" that both parties interpret as a claim for battery. Under Illinois law, a battery occurs when a person intentionally causes harmful or offensive contact with another. *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995). The defendants do not dispute that a battery occurred, but they argue that they are not liable because they acted in self defense. A person is justified in defending himself if he reasonably believes that he is being threatened with immediate bodily harm, so long as he uses only such force as is reasonably necessary under the circumstances. *Blackburn v. Johnson*, 543 N.E.2d 583, 587 (Ill. App. Ct. 1989). Whether or not Officer Fairley had reason to think the dog was dangerous, there is a genuine dispute about whether the dog had stopped advancing when the officers started to shoot, whether they continued to shoot after the dog retreated, whether they shot in the direction of Mr. Brandon's yard, and whether they were aware that there were people in Mr. Brandon's backyard.[11] Viewed in the light most favorable to Mr. Brandon, a jury could reasonably conclude from these facts that the officers continued to use force after the dog retreated and there was no continuing threat of bodily harm, and that the force used by the officers

---

[11] Accordingly, I deny the motion to strike paragraphs 29, 31, 33 and 35 of the plaintiffs' response to the statement of material facts.

under the circumstances was not reasonable. *See People v. Jackson*, 340 N.E.2d 673, 678 (Ill. App. Ct. 1975) (self-defense is not available where initial aggressor is in retreat).

In the alternative, the officers argue that, if they are liable, they are entitled to immunity under the Illinois Tort Immunity Act, 745 ILCS 10/2-202. Section 2-202 immunizes public employees from liability in the course of execution or enforcement of the law, unless their acts constitute willful and wanton conduct. "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Mr. Brandon argues that their acts show "utter indifference." If the officers were reckless, *i.e.*, if they "ignore[d] known or plainly observable dangerous conditions and [did] something that will naturally and probably result in injury to another," their conduct may be characterized as "willful and wanton." *Mostafa v. City of Hickory Hills*, 436 N.E.2d 623, 630 (Ill. App. Ct. 1997). This is ordinarily a question of fact for the jury and should rarely be ruled upon as a matter of law. *Id.* The evidence here does not overwhelmingly favor the defendants such that a judgment for the plaintiffs could not stand. *See id.* Summary judgment is denied as to Count II.

Mr. Parker brings a claim for false imprisonment under Illinois law. "The essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1231 (Ill. 1990). I have already held that Mr. Parker was arrested, and that there are questions of fact which preclude a determination as a matter of law that the officers had reasonable grounds to believe that Mr. Parker had committed a crime. The officers argue that they are entitled to immunity under § 2-202, but viewing the facts in the light most favorable to Mr. Parker, a jury could conclude that the officers were at least reckless in their determination that they had probable cause or reasonable suspicion to seize him. *See Mostafa*, 436 N.E.2d at 630. Summary judgment is therefore denied as to Count IV.

V.

The plaintiffs' claims against Chief Leach in Counts I, III and V are DISMISSED. The defendants' motion for summary judgment as to Mr. Brandon is GRANTED as to Count I and DENIED as to Count II. The defendants' motion as to Mr. Parker is DENIED as to Count IV and DENIED as to the claims against the individual officers for arrest without probable cause in Counts III, but GRANTED with respect to the claims in Count III against the Village and claims against the

-30-

individual officers for excessive use of force.   The defendants'
motion is GRANTED as to the claims in Count V.   The defendants'
motion to strike certain paragraphs of the plaintiffs' response to
the statement of material facts is DENIED IN PART and otherwise DENIED
as moot.

ENTER ORDER:

_____

**Elaine E. Bucklo**
United States District Judge

Dated:   August  2, 2001