# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6100 | **DATE** | 12/3/2001 |
| **CASE TITLE** | Brandon, et al. Vs. Village of Maywood, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order on various motions in limine. Plaintiffs' motions numbers 8, 9, 10 and 16 are granted as unopposed. Their motions numbers 1, 4, 5, 13, and 15 are granted; their motions numbers 2, 3, 11,17, and 18 are denied; and their motions numbers 6, 7, and 14 are granted in part and denied in part. The defendants' motions number 1, 2, 6, 7, 11 and 12 are granted as unopposed; their motions numbers 3, 4, 5, 8, and 10 are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

| MPJ | courtroom deputy's initials |
|---|---|

4
number of notices

DEC 04 2001
date docketed

CM
docketing deputy initials

12/3/2001
date mailed notice

MPJ
mailing deputy initials

**Document Number**

75

01 DEC -3 AM 11:55

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BRANDON, LAVELLE PARKER and ESSIE NICHOLS, <br><br> Plaintiffs, <br><br> v. <br><br> VILLAGE OF MAYWOOD, a Municipal Corporation, WILLIAM LEACH, as Chief of Police for the Village of Maywood, SERGEANT JAMES ROBINSON, OFFICER SHAWN WOODS, OFFICER DARRYL FAIRLEY and OFFICER ALVIN CROWELL, <br><br> Defendants. | No. 99 C 6100 |

## MEMORANDUM OPINION AND ORDER

James Brandon, LaVelle Parker and Essie Nichols filed this action under 42 U.S.C. § 1983 and various Illinois laws for violations of their civil rights arising out of a botched drug bust on July 16, 1998. On August 3, 2001, I granted summary judgment for the defendants on all of Ms. Nichols' claims and on all of the federal claims against Chief Leach and the Village of Maywood. I granted summary judgment on some of Mr. Brandon's and Mr. Parker's claims; all that remains for trial is Mr. Brandon's state law claim for battery, Mr. Parker's state law claim for false imprisonment, and Mr. Parker's § 1983 claim against the individual defendants for arrest without probable cause. *Brandon v. Village of Maywood*, 157 F. Supp. 2d 917 (N.D. Ill. 2001). The Village has participated in the filing of the pretrial order, but all of the claims against it

were resolved on summary judgment, so it is no longer a party to this case. Therefore I construe all filings on behalf of "the defendants" as applying to Sergeant Robinson and Officers Woods, Fairley and Crowell only. The parties bring several pretrial motions, which I consider *seriatim*.

## I. Plaintiffs' motions

Mr. Brandon and Mr. Parker bring eighteen motions in limine. The defendants do not object to numbers 8 (social security and medicare benefits), 9 (similar injuries from prior or subsequent incidents), 10 (same), or 16 (settlement negotiations), so they are granted as unopposed.

### 1. Defendants' Expert James Marsh

Defendants disclosed James Marsh as an expert on police procedures and practices. Many of his opinions were rendered moot by my decision on summary judgment (*viz.*, the propriety of the use of force against Mr. Parker, the policy and practices of the Village, and the justification for the use of lethal force against Ms. Nichols' dog, Duke), and the Defendants agree, in general terms, not to elicit testimony from Mr. Marsh on a number of matters. For example, they agree not to ask Mr. Marsh to offer an opinion about any party's state of mind (*e.g.*, why Ms. Nichols let her dog out). The plaintiffs argue that I should bar Mr. Marsh from testifying because his opinions are qualitatively indistinguishable from those of their expert, Anthony Bouza, whom

I barred from testifying under Rule 702. *See* Minute Order of August 2, 2001. When an expert offers an opinion about the application of a legal standard, like "probable cause" or "reasonable suspicion," an expert's role is "limited to describing sound professional standards and identifying departures from them," *see West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997), and I held that Mr. Bouza's opinions did not do this. Accordingly, I must examine the specific opinions of Mr. Marsh to determine whether that is so here.

After eliminating the improper legal conclusions, the defendants do not identify what Mr. Marsh's opinions will be. Instead, they promise only that "Marsh's opinions, as set forth in his report, will clearly assist the trier of fact in this case with understanding generally accepted police practices relative to investigations and arrests." Marsh's report, which is 22 pages long, consists of a summary of facts, a page-long list of judicial opinions and other materials consulted, and a summary of his opinions on various matters. As the defendants have already conceded, I instruct the jury on the law, and expert witnesses do not. *See United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996). The defendants' promises to comply with the strictures of Rule 702 do not assist me in performing my gatekeeping function, because I cannot discern what Mr. Marsh's opinions are after removing the admittedly improper legal conclusions. Nor is it fair

to require the plaintiffs to guess at what Mr. Marsh's opinions at trial would be.

On the only issue on which the defendants identify what Mr. Marsh's trial testimony would be, he has not been shown to be qualified to testify. Mr. Marsh opines that Mr. Brandon's injuries were caused by bullets that ricocheted after the officers fired at Ms. Nichols' dog, not from a direct hit. The plaintiffs object that Mr. Marsh is not qualified to offer this testimony because he never visited the scene of the shooting and because he lacks the medical background to offer an opinion on the cause of Mr. Brandon's wounds. "Pursuant to Rule 702, a witness may offer an expert opinion only if he or she draws on some special 'knowledge, skill, experience, training, or education' to formulate that opinion." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999). The defendants argue that Mr. Marsh is qualified to offer an opinion on the "bullet ricochet issue" because has been certified as a firearms instructor by the FBI and has lectured on weapon control. However nothing in his resume indicates that he has any training, experience, or specialized knowledge about ballistics, which is, relevantly, "the science of the motion of powder-propelled projectiles in flight." *Webster's Third New Int'l Dictionary* 167 (1981). The defendants have not identified anything in Mr. Marsh's background as a firearm instructor that would specifically qualify him to testify about the trajectory of a

bullet and the type of wound it would inflict. Nor is his opinion saved by his reliance on a training manual about the science of bullet ricochets, or on Mr. Brandon's medical records. Those items may be "sufficient facts or data" under Rule 702 to support an opinion by an expert, but Mr. Marsh is no more qualified to interpret these documents or apply them to the facts of this case than a jury. For each of these reasons, the motion to exclude Mr. Marsh's testimony is granted.

## 2. Prior dog-bite incidents

The plaintiffs ask me to exclude any evidence that Ms. Nichols' dog, Duke, had bitten or attacked anyone before, and particularly evidence of an incident on June 18, 1997. The plaintiffs argue that any prior attacks are only relevant to the reasonableness of the officers' actions if the officers had knowledge of them at the time of the shooting incident that is the subject of this case. Officers Robinson and Crowell testified that they had no knowledge of the dog before showing up at Ms. Nichols' house. Pl.'s Ex. F and G. Officer Fairley testified that he was not afraid of the dog until he actually saw it, but he also testified that he was one of the responding officers to the 1997 attack, although he did not author the incident report. The evidence of the 1997 attack is relevant to Mr. Brandon's tort claim even according to the plaintiffs' theory. The motion to exclude this evidence is denied.

### 3. Alcohol Consumption by Mr. Brandon

The plaintiffs object to the admission of testimony that Mr. Brandon had consumed any alcoholic beverages on the day he was shot by the defendants. However, consumption of alcohol may be relevant to his memory and perception of events. *See Cole v. Bertsch Vending Co., Inc.*, 766 F.2d 327, 334-35 (7th Cir. 1985) (Evidence of alcohol consumption prior to accident was relevant to witness's recollection of events.); *People v. Di Maso*, 426 N.E.2d 972, 975 (Ill. App. Ct. 1981) (Evidence of alcohol consumption is admissible as probative of the witness's sensory capacity.). I deny the motion.

### 4. Policies and Procedures of the Maywood Police Department

Because I granted summary judgment for the Village, evidence of its policies or procedures is not relevant to any question of the Village's liability. The defendants agree, so the motion is granted. However, evidence of training that the defendants actually received prior to the events leading up to this case is relevant to the reasonableness of their actions.

### 5. Mr. Parker's criminal history

The plaintiffs move to exclude any evidence of Mr. Parker's prior arrests and convictions because it is not relevant to whether the officers had reasonable suspicion to detain him, but the defendants argue that there are at least three permissible reasons to admit the evidence. First, they argue that prior arrests may be

admissible as evidence of bias in § 1983 actions. *See Pittsley v. Warish*, 927 F.2d 3, 9-10 (1st Cir. 1991) (Evidence of arrest by same officer two weeks prior to arrest that was subject of § 1983 claim admissible under Fed. R. Evid. 404(b).). Here, Mr. Parker was arrested in January 1998 by the Cook County Sheriff's Police Department and convicted of possession of a controlled substance, and he was arrested by the Maywood Police Department in August 1997 and convicted of manufacture/delivery of cannabis. The Cook County arrest is clearly irrelevant to Mr. Parker's claims against the Maywood police officers in this case. Unlike *Pittsley*, there is no evidence that any of the officers who are defendants in this action had any involvement in the 1997 arrest by the Maywood Police Department. Although courts have admitted evidence of a prior arrest by the same police department, rather than the same police officers, *see Heath v. Cast*, 813 F.2d 254, 259 (9th Cir. 1987), any evidence of bias on this basis here is slight, and I conclude that the potential for unfair prejudice to Mr. Parker outweighs any probative value. *See Lovergine v. Willerth*, No. 84 C 7839, 1986 WL 10352, at *1 (N.D. Ill. Sept. 12, 1986).

Second, the defendants argue that Mr. Parker's two convictions are admissible under Fed. R. Evid. 609(a)(1), which says that, in a civil case, a prior conviction may be used to attack the credibility of a witness if the conviction is less than ten years old and the crime was punishable by death or more than one year in

prison. Mr. Parker's prior convictions meet these requirements, but admission under Rule 609(a)(1) is subject to Rule 403, which excludes evidence when its potential for unfair prejudice substantially outweighs its probative value.[1] The defendants cite to an Illinois state case for the considerations of the prejudice/probativity balancing for criminal convictions, but I need not accept state interpretations of federal procedural rules. The defendants argue that Mr. Parker's prior convictions are probative because the jury has to assess his credibility. There is no evidence that the defendants were aware of Mr. Parker's convictions when they pursued and detained him, so they are not relevant to the question of reasonable suspicion. Rule 609 recognizes that any felony conviction bears on a witness's credibility, but some convictions are more probative than others. A conviction for comparatively minor drug offenses is less probative of truthfulness than one for perjury or fraud. On the other hand, the potential for prejudice to Mr. Parker is great. The main issue for both of his claims is whether the officers had reasonable suspicion to believe that he was involved in a drug transaction, and a jury might improperly consider evidence of his prior convictions for similar offenses as an indication that the officers had a reason to suspect him of the same activity here. I

---

[1] Exclusion of evidence under Rules 609 and 403 is discretionary. *See United States v. Cavender*, 228 F.3d 792, 798 (7th Cir. 2000).

find that the potential for unfair prejudice outweighs any value that the convictions would have as evidence of Mr. Parker's credibility.

Finally, the defendants argue that Mr. Parker's prior arrests are admissible as evidence of damages or causation. Other courts have held that, in a civil rights action where the plaintiff claimed emotional damages as a result of incarceration or excessive use of force, other arrests or periods of incarceration were probative of mental suffering. *Peraza v. Delameter*, 722 F.2d 1455, 1457 (9th Cir. 1984) (holding that subsequent encounters with police and troubles in school were relevant to claim for emotional damages in excessive force case); *Bryan v. Jones*, 519 F.2d 44, 46 (5th Cir. 1975) (holding that prior imprisonment was relevant to claim for trauma of incarceration). The court in *Peraza* did not explain the significance of *subsequent* encounters, which are anyhow not at issue here, and *Bryan* is distinguishable. There, the plaintiff had been incarcerated wrongfully for 36 days, and he claimed damages for emotional "suffering caused by the very fact of incarceration." 519 F.2d at 46. The court noted that "[e]ven a minimal sort of penal confinement may be debilitating to many. Under comparable conditions of confinement, however, this mental anguish may be much less for the recidivist than for one incarcerated for the first time." *Id*. Here, however, Mr. Parker's claim for mental anguish as a result of being restrained and unable

to move to safety as four officers fired their guns at a dog is qualitatively different than a routine mistaken handcuffing. There is no indication that either of Mr. Parker's previous arrests involved similar facts, so their probative value is quite low. Neither the *Bryan* nor the *Peraza* court so much as considered the risk of unfair prejudice to the defendant, which, as I have already noted, is quite serious here. I grant the motion to exclude evidence of Mr. Parker's prior arrests and convictions.

6. & 7. Criminal history of Felicia Armstrong and Paula Wilson

The defendants argue that evidence of Ms. Armstrong's and Ms. Wilson's criminal histories should be admissible under Rule 404(b) as evidence of bias because each had been arrested by the Maywood Police Department. However, because there is no evidence that either woman was arrested by the officers involved in this case, I reject this argument for the same reasons as I did for Mr. Parker. Nevertheless, Officers Robinson, Fairley and Woods testified that they had had "contacts" with Ms. Armstrong and knew her to be a drug user. Officer Woods could not say for sure whether he knew her to be a drug user at the time he saw her in the alley behind Ms. Nichols' house with Mr. Parker, but Officer Fairley testified that he knew about her drug problems before that, and Officer Robinson says he didn't know her exact record, but he suspected her of being involved with drugs based on things he had heard. Any information about her drug use would be relevant to a reasonable

belief that a drug transaction was occurring, so Officer Fairley may testify about what he knew at the time.

There is no evidence that Ms. Armstrong was ever convicted of a felony, but the defendants say that Ms. Wilson was convicted in 1997 of a felony punishable by imprisonment in excess of one year, namely, possession of a controlled substance. The danger of improper inference (*viz.*, that what the officers saw in the alley was a drug transaction) and unfair prejudice to Mr. Parker is just as great here as with his own prior conviction. I find that the prejudicial value of the conviction substantially outweighs the value of the conviction for impeachment purposes, and I exclude it.

11. Relationship between plaintiffs' attorneys and experts

The plaintiffs object to evidence of the circumstances surrounding retention of plaintiffs' counsel or of the fee arrangement. The defendants do not object, so in this regard the motion is granted. However, the plaintiffs also ask me to bar evidence of communications between plaintiffs' counsel and their medical experts or treating physicians on the grounds that the communications are "clearly hearsay, inadmissible, and not probative of any issue in this case," not to mention severely prejudicial. The communications may also be privileged, though the plaintiffs do not ask me to exclude them on that basis. Without knowing what the specific communications are, however, I cannot determine whether they are hearsay or relevant, so I must deny the

motion in this regard. The plaintiffs may renew their objections to specific evidence at trial.

### 12. "Ridicule"

The plaintiffs ask me to order the defendants to "refrain from using any phrases to describe the Plaintiffs which hold the Plaintiffs up to ridicule." They cite to an Illinois state case which held that the trial court erred in allowing counsel to call the opposing party a "hoodlum" and a "rat." *Raucci v. Connelly*, 91 N.E.2d 735, 742-43 (Ill. App. Ct. 1950). I cannot determine from this perfunctory and vague argument what the plaintiffs are asking me to exclude. The motion is denied.

### 13. Comments to Mr. Parker about "selling 'rocks'"

Mr. Parker apparently admitted at his deposition that "it was possible that Armstrong and Wilson asked if he was working that day, which meant selling 'rocks'."[2] The plaintiffs object that this is hearsay and irrelevant. The defendants argue that the statement is non-hearsay because it is offered for the effect on the listener (*i.e.*, it explains why Mr. Parker ran when approached by the police), and argue that Mr. Parker's flight is relevant to his credibility. The defendants do not explain how this evidence bears on Mr. Parker's credibility at all. The key question for Mr.

---

[2] The plaintiffs do not identify the specific statement that they want me to exclude. The defendants cite to page 73 of Mr. Parker's deposition, but neither party provided me with a copy of the relevant page.

Parker's case is whether the officers had reasonable suspicion that Mr. Parker was engaged in a drug transaction. The comments by Ms. Armstrong or Ms. Wilson would only be relevant if there was evidence that the officers had heard them. Their question to Mr. Parker is not evidence that he was engaged in a drug transaction, and the defendants do not explain why the question would otherwise lead to his flight. It is therefore hearsay, and I grant the motion.

14. Reference to "full breed German Shepherd"

The plaintiffs ask me to bar any reference to Ms. Nichols' dog Duke as a "full breed German Shepherd" on the grounds that it is hearsay, unfounded, not true, and not supported by any scientific evidence. The hearsay objection is confounding; what is the alleged out-of-court statement? The defendants agree not to say that Duke was a full breed, which overcomes the "unfounded and not true" objection. However, they plan to establish that Duke was at least a partial breed German Shepherd through the testimony of the officers. The plaintiffs do not even suggest that the markings of a German Shepherd are outside the knowledge of the average juror, so this is not a matter that requires scientific or expert testimony, and the defendants may offer the officer's observations.

15. Conclusions from Illinois State Police investigation

The plaintiffs move to exclude the testimony of Illinois State Police ("ISP") officers Bouche, Hall, Michalski, Cavanaugh,

Billingslea, Pritchett, McCann and Kinsella on the grounds that they were not disclosed as experts and lack personal knowledge of any events relevant to this case. The ISP conducted an independent investigation into the shooting and concluded that the officers' use of deadly force in response to the charging dog was justified. The defendants argue that all of the ISP witnesses were disclosed to the plaintiffs either in responses to interrogatories or in documents that were produced. However, the defendants offer the witnesses for the opinion that the officers' use of force was justified. The ISP witnesses were never disclosed as experts pursuant to Fed. R. Civ. P. 26(a)(2), so I need not reach the issue of whether their opinions would be admissible on that basis. *See* Fed. R. Civ. P. 37(c)(1). And the ISP witnesses lack personal knowledge of the events leading up to the shooting, so they may not offer their opinions as lay witnesses, either. *See* Fed. R. Evid. 701(a) and advisory committee note (stating that lay witnesses may offer testimony in the form of opinion only if they have first-hand or personal knowledge.). The ISP investigators may not offer testimony in the form of an opinion or conclusion.

The plaintiffs also ask me to exclude the ISP reports as hearsay. That motion is also granted.

### 17. Evidence of drug or high crime area

All of the defendants testified that the area around the Nichols home was known to be a high drug or high crime area. The

14

plaintiffs ask to exclude this testimony because it lacks foundation and because it would be prejudicial in light of the fact that neither the Nichols home nor any of the plaintiffs were ever personally suspected of drug activity prior to the incident at issue here. The plaintiffs may cross-examine the defendants on the basis for their belief (there is no indication that they did so at the officers' depositions), and it is relevant to the reasonableness of their actions. The motion is denied.

### 18. Cause of Mr. Brandon's injuries

I have already held that defendant's expert James Marsh may not testify that Mr. Brandon's wounds were caused by bullets that ricocheted because he was not a ballistics or medical exert, and the plaintiffs ask me to bar any testimony on the matter. The defendants argue that Mr. Brandon's records "fully support" the ricochet theory, but again, do not provide them to me. However, to the extent that the plaintiffs offer expert testimony about the cause of Mr. Brandon's injury, the defendants may cross examine on the ricochet theory. The motion is denied.

### II. Defendants' motions

The defendants bring twelve motions in limine. The plaintiffs file no responses to numbers 1 (other legal actions involving these defendants), 2 (insurance or indemnification), 6 (policies or practices of Village of Maywood), 7 (Village of Maywood Rules and regulations), 9 (dismissed causes of action), 11 (exclusion of non-

party witnesses), and 12 (question jurors who indicate bad experience with law enforcement outside presence of other prospective jurors), so they are granted as unopposed.

### 3. Dr. Kramer's bills

The defendants move to bar admission of, and presumably also recovery for, the bills for Mr. Brandon's consultation with Dr. Kramer. They argue that Dr. Kramer did not provide "treatment," so the consultation was unnecessary, and cite Illinois Pattern Jury Instruction 30.06, which permits recovery for "[t]he reasonable expense of necessary medical care, treatment, and services received." Mr. Brandon consulted a neurologist because of persistent pain and numbness in his leg. Dr. Kramer assessed Mr. Brandon's condition and concluded that surgery was not necessary, but that pain medication might be. The defendants do not provide any authority for the proposition that Mr. Brandon's appointment with Dr. Kramer was not "reasonably medically necessary" simply because he did not administer any medication at that time. The motion to exclude Dr. Kramer's bills is denied.

### 4. Dr. Kramer's testimony

The defendants also move to bar Dr. Kramer from testifying because he was never disclosed as an expert under Fed. R. Civ. P. 26(a)(2). The plaintiffs argue that Dr. Kramer was a treating physician, disclosed to the experts as such, not a retained expert witness, and therefore that he need not be disclosed under Rule

26(a)(2).

Rule 26(a)(2)(A) requires pretrial disclosure of any witness "who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." When Rule 26 was amended in 1993, the advisory committee notes stated that treating physicians could testify as experts without the requirement of a written report under Rule 26(a)(2)(B), but did not state whether treating physicians were exempted from disclosure under Rule 26(a)(2) altogether or what qualified a witness as a "treating physician." The Court of Appeals interpreted a pre-1993 version of Rule 26 to require disclosure of an expert "if his testimony does not come from his personal knowledge of the case, or if his knowledge was 'acquired or developed in anticipation of litigation or for trial.'" *Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993) (citations omitted).[3] In *Patel*, the court upheld exclusion of expert opinions on the standard of care because the plaintiffs' treating physicians had not been disclosed as experts in response to an interrogatory asking for the names of all experts who would testify at trial. *Id.* at 217-18.

Here there is no evidence that the defendants served a similar interrogatory (asking specifically for names of testifying experts) on Mr. Brandon. Instead, they asked him to identify "all doctors,

---

[3] This standard has since been applied to the post-1993 version of Rule 26. *See Zarecki v. National R.R. Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996) (Castillo, J.).

surgeons, technicians, physicians or health care providers who examined, tested or treated Plaintiff." Mr. Brandon listed Dr. Kramer in response. However, Rule 26(a)(2) disclosures are mandatory; they must be made even without a request. *See* Fed. R. Civ. P. 26(a), 1993 advisory committee note. The result in *Patel* implies that, although Rule 26 excuses treating physicians from the requirement of a Rule 26(a)(2)(B) report, it still requires treating physicians to be disclosed as experts under Rule 26(a)(2)(A) if they offer expert opinions under Rule 702.

With regard to Dr. Kramer's testimony, then, the question is whether he will offer any testimony as an expert that is subject to Rule 702. The letter from Dr. Kramer to plaintiffs' counsel describes the examination, states a diagnosis and a prognosis for recovery, and states an opinion about the need for future medical treatment. Dr. Kramer said in his deposition that he did not review any documents prior to his examination of Mr. Brandon, and he conducted an actual physical examination, so he has at least some personal knowledge of Mr. Brandon's condition. The plaintiffs stress the timing and process of retaining Dr. Kramer, and how bills were directed, to demonstrate that his knowledge was not "acquired or developed in anticipation of litigation or for trial." The focus on this portion of the *Patel* standard misreads the law both as it stood then and as it stands now. *Patel* upheld the exclusion of treating physician testimony about the standard of

care, which the court held was "'classic' expert testimony," without regard to the mechanics of how the expert was retained. 984 F.2d at 218. The Federal Rules were amended in 2000, and although Rule 26(a)(2) was not changed, Rules 701 and 702, regarding lay and expert opinion testimony, were amended to sharpen the line between a physician's testimony that is subject to Rule 702 as "expert" testimony.

Rule 701 of the Federal Rules of Evidence, which defines the limits of opinion testimony by lay witnesses, previously provided that:

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The 2000 amendments to Rule 701 added (c), which requires that the testimony is "not based on scientific, technical or other specialized knowledge within the scope of Rule 702." The advisory committee notes state that the purpose of the amendment is to prevent evasion of the reliability requirements of Rule 702 *and the disclosure requirements of Rule 26* by "the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701, advisory committee notes.

For a treating physician, testimony about what the physician actually observed and what treatment he provided are not matters outside of the ken of the average juror, so Rule 702 and the

disclosure obligations of Rule 26(a)(2)(A) are not triggered. However, when a physician states a diagnosis or prognosis, he may, but need not, rely on specialized medical training and knowledge that is outside of the average juror's sphere of knowledge.

Other courts in this district have held that diagnosis is non-expert testimony that, like personal observations and treatment, need not be disclosed. *See Kondziolka v. Burlington N. and Santa Fe Ry. Co.*, No. 99 C 2148, 2000 WL 1368041, at *2 (N.D. Ill. Sept. 15, 2000) (Castillo, J.) (finding that Rule 26 did not require disclosure of testimony about personal observations, treatment *and diagnosis*, but testimony about causation was expert testimony subject to disclosure); *Tzoumis v. Temple Steel Co.*, No. 96 C 6945, 2001 WL 423000, at *4 (N.D. Ill. Apr. 24, 2001) (Nordberg, S.J.) (same). However, whether a diagnosis requires a doctor to resort to "scientific, technical or other specialized knowledge" within the scope of Rule 702 will depend on the particular facts of the case. For example, a doctor would clearly rely on specialized knowledge to distinguish between a case of inhalation anthrax and a mere case of pneumonia.

In this case, however, Dr. Kramer's diagnosis was as follows: "It is my impression that the patient has had gunshot wounds to his right leg with residual permanent paresthesias and associated leg buckling." Pl's Ex. H. "Paresthesia" is just a fancy word for "a sensation of pricking, tingling or creeping on the skin."

20

*Webster's Third New Int'l Dictionary* 1641 (1981). This is a diagnosis that any lay person could make based on Mr. Brandon's statements, so no specialized or "expert" knowledge was required here. Therefore Dr. Kramer's diagnosis is not subject to Rule 702 and he need not have been disclosed as an expert to offer testimony about it at trial.

However, his opinions about Mr. Brandon's prognosis or necessity for future treatment (that the numbness and paresthesia are permanent, and that surgery is not necessary) required him to rely on medical expertise outside of the lay person's realm of knowledge, and thus it is expert testimony as defined by Rule 702, so disclosure is required under Rule 26(a)(2)(A). The recent amendments to the rules do not appear to have affected the exemption from written reports under Rule 26(a)(2)(B), so no report was required, but the plaintiffs did even minimally disclose Dr. Kramer as an expert on the issues of prognosis or future treatment as required by Rule 26(a)(2)(A).

Under Rule 37(c)(1), failure to comply with Rule 26(a) means that Dr. Kramer may be barred from testifying about those matters at trial. "The sanction of exclusion under Rule 37(c)(1) is 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996). The plaintiffs do not attempt

to justify the failure, but it may be harmless depending on what the testimony is. The purpose of Rule 26(a)(2)(A) disclosures is afford opposing parties "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Rule 26(a)(2), 1993 advisory committee note. Dr. Kramer was disclosed to the defendants as a treating physician, and the defendants took Dr. Kramer's deposition on November 6, 2000, nearly three and a half months before the close of discovery and more than a year before trial. If Dr. Kramer offered his opinions about Mr. Brandon's prognosis and need for future treatment at that deposition, then the failure to file a formal disclosure is harmless; the defendants had plenty of time after that to retain an opposing expert or seek further discovery. However, neither party filed a complete copy of Dr. Kramer's deposition, so I cannot determine whether the opinions were actually offered at his deposition. If the plaintiffs wish to offer Dr. Kramer's testimony on this point, they must, within one week of the issuance of this order, file a copy of the relevant portions of the deposition. I therefore deny the motion.

### 5. Unpaid medical bills

The defendants challenge the admission of Mr. Brandon's unpaid medical bills because, they say, no liens have been filed on them, and they are speculative and irrelevant. This conclusory argument is not enough to challenge the reasonableness of the bills, which

is the touchstone of admissibility under Illinois law. *See Barreto v. City of Waukegan*, 478 N.E.2d 581, 589 (Ill. App. Ct. 1985) ("[I]n order to recover for medical and surgical expenses, it is necessary that two things be proved: first, that the claimant has paid or become liable to pay a specific amount, and second, that the charges made were reasonable charges for services of that nature."). Payment of a bill is prima facie evidence of the reasonableness of the expense. *Id.* The defendants do not even allege, much less come forward with any evidence to suggest that Mr. Brandon's liability for his medical bills has been discharged. I will not exclude the bills on that basis.

8. Mr. Parker's injuries and medical treatment

The defendants move to bar any evidence of Mr. Parker's injuries or medical treatment because I held on summary judgment that "Mr. Parker claims no physical injury as a result of the officers' actions in detaining him." 157 F. Supp. 2d at 929. However, the question there was whether there was any evidence of excessive force in the process of handcuffing and restraining Mr. Parker. Mr. Parker claims that he suffered a ringing in his ears from gunshots, and he went to the hospital the day after the shooting for treatment. Strictly speaking, Mr. Parker's detention is a but-for cause of the ringing in his ears, but it is not an injury that he sustained in the process of being pushed to the ground and handcuffed, which was the question on summary judgment.

I did not hold that Mr. Parker was barred from recovering for his other injuries. The motion is denied.

10. Mr. Brandon's lost income and future medical treatment

The plaintiffs do not respond to the defendants' request to bar recovery for lost income, so that part of the motion is granted as unopposed. The defendants argue that Mr. Brandon should not be allowed to recover for future medical treatment because there is no evidence that he has been treated since the days after the shooting and there is no evidence that he will seek future treatment. However, the defendants have not succeeded in demonstrating that Mr. Brandon's visit to Dr. Kramer in January 1999 was not "treatment," and Dr. Kramer's evaluation, produced in discovery, indicates that Mr. Brandon will likely require pain medication in the future. This is sufficient evidence of the need for future treatment to overcome the defendants' current objection. The motion is denied.

### III. Summary

The plaintiffs' motions numbers 8, 9, 10, and 16 are GRANTED as unopposed; their motions numbers 1, 4, 5, 13, and 15 are GRANTED; their motions numbers 2, 3, 11, 17, and 18 are DENIED; and their motions numbers 6, 7, and 14 are GRANTED IN PART and DENIED IN PART.

The defendants' motions numbers 1, 2, 6, 7, 9, 11, and 12 are GRANTED as unopposed; their motions numbers 3, 4, 5, 8, and 10 are DENIED.

ENTER ORDER:

_Elaine E. Bucklo_ (signature)

**Elaine E. Bucklo**
United States District Judge

Dated:    November 30, 2001